BOONSTRA, RJ.
(concurring). I respectfully concur in the result reached by the majority, as well as in much of its reasoning. I specifically agree with the majority and the trial court that Chrysler Group, LLC’s applications for air pollution control tax-exemption certificates should have been evaluated by the Michigan Department of Environmental Quality (MDEQ) and that the trial court, therefore, properly reversed the decision of the State Tax Commission (STC) to grant Chrysler’s applications and remanded to the MDEQ.
I write separately to explain my somewhat differing reasoning, and to highlight certain concerns. For example, I do not read the pertinent statutes as affording the MDEQ or the STC carte blanche to “preapprove” facilities based on the memorandum of understanding (MOU) that those agencies entered into at the direction of the Legislature, pursuant to § 311 of Part 2, Article VII, of 2011 PA 63,[1] purportedly in the interests *690 of streamlining the process for evaluating applications for pollution control tax exemptions. The MOU indeed purports to require the MDEQ to “[a]nnually by June 1, review and submit to the STC the pollution control equipment list commonly approved by the MDEQ for pollution control tax exemptions,” and “[w]hen requested by the STC, assist in the review of a limited number of applications where the equipment is not identified on the annual pollution control equipment list approved by the MDEQ.” Further, the MOU purports to require the STC to “[a]nnually by July 1, approve a list of air . . . pollution control equipment determined to be commonly approvable for pollution control tax exemptions by the MDEQ.”
However, § 311 — pursuant to which the MOU was adopted — provides in its totality as follows:
The [MDEQ] shall enter into a memorandum of understanding with the department of treasury to develop a process for the review and approval of tax exemption certificates in accordance with the list of commonly approved air pollution control equipment adopted by the state tax commission on August 16, 2010 and the list of commonly approved water pollution equipment adopted by the state tax commission on August 16, 2010. [2011 PA 63, art VII, part 2, § 311 (emphasis added).]
I first note (as a portion of the italicized language reflects) that § 311 refers to a specific list in the past tense, i.e., one that was “adopted by the [STC] on August 16, 2010 . . . .” Nowhere in that statutory language does the Legislature authorize or direct the MDEQ or the STC to take it upon themselves to create future lists[2] that arguably may then be deemed *691 to constitute preapproved equipment regardless of the particular factual circumstances.
Second, § 311 requires the MDEQ to enter into an MOU “to develop a process for the review and approval of tax exemption certificates” in accordance with the list referred to in § 311. (Emphasis added.) I am unable to read that language as clearly authorizing the MDEQ and the STC to preapprove equipment for tax exemption without undergoing the otherwise-required statutory evaluation in the particular circumstances presented.
Third, § 311 refers to the entry into an MOU concerning “commonly approved air pollution control equipment. . . .” (Emphasis added.) I am aware of no definition of the term “equipment” that would make it synonymous with the term “facility,” as defined in MCL 324.5901. To the contrary, MCL 324.5901 defines “facility” to mean “machinery, equipment, structures, or any part or accessories of machinery, equipment, or structures” under certain conditions. The Legislature’s inclusion of the term “equipment” within the statutory definition of “facility” along with items other than “equipment,” i.e., “machinery,” “structures,” and “any part or accessories” of such “machinery” or “structures,” demonstrates to me that the Legislature understood the meaning of “equipment” and “facility” to be different, and that the inclusion of the term “equipment” within the definition of “facility” reflects that “equipment” necessarily has a narrower definition than does “facility.” See US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass’n (On Rehearing), 484 Mich 1, 12-17; 795 NW2d 101 (2009). Consequently, I do not read § 311 as directing the MDEQ to enter into an MOU relating *692 to “facilities,” as defined in MCL 324.5901, but rather as meaning what it says — an MOU that relates to certain “equipment.”[3]
Ultimately, these observations lead me to the same outcome as the majority: the “list” in question is not appropriately used in this case to effect a preapproval of the purported “facilities” that are the subject of Chrysler’s applications.
Further, I find inadequate record evidence that those purported “facilities” either meet the statutory definition of “facility,” in that they were “installed or acquired for the primary purpose of controlling or disposing of air pollution that if released would render the air harmful or inimical to the public health or to property within this state,” MCL 324.5901, or that they were “designed and operated primarily for the control, capture, and removal of pollutants from the air, and [are] suitable, reasonably adequate, and meet[] the intent and purposes of part 55 [of the Natural Resources and Environmental Protection Act, MCL 324.5501 through MCL 324.5542, concerning air pollution control] and rules promulgated under that part,” MCL 324.5903. (Emphasis added.)[4]
*693 I fully appreciate that there may be a value in streamlining processes, and that budgetary restraints may provide added incentive for such streamlining. However, those factors do not excuse agency noncompliance with statutory requirements. The trial court therefore properly remanded this matter to the MDEQ for an evaluation of whether the statutory requirements of MCL 324.5901 and MCL 324.5903 are met, absent which it would not be appropriate for the STC to grant the sought-after air pollution control tax-exemption certificates.

 2011 PA 63 was an omnibus appropriations act.

 The list provided by the parties on appeal indicates that it was approved by the STC on June 12, 2012.

 Neither 2011 PA 63 nor the Natural Resources and Environmental Protection Act, MCL 324.101 et seq., provides a definition of “equipment,” nor has our caselaw defined the term in this context. Given the nonexistence of a statutory definition, this Court may consult a dictionary to aid in its interpretation. See Johnson v Pastoriza, 491 Mich 417, 436; 818 NW2d 279 (2012). The Merriam-Webster’s Collegiate Dictionary (11th ed) defines “equipment” as “the set of articles or physical resources serving to equip a person or thing: as (1) : the implements used in an operation or activity. . . (2) : all the fixed assets other than land and buildings of a business enterprise (3) : the rolling stock of a railway . . ..” (Emphasis added.) “Equipment” would, therefore, seem not to include a building or structure, or a portion thereof, although it nonetheless may constitute a “facility.”

 Without the requisite MDEQ findings under MCL 324.5903, for example, I am unable to conclude from the current record (as apparently *693 the majority does) that “Chrysler seeks exemptions for equipment and parts of structures that either directly contribute to removing pollution from the air or that house equipment that does so” or that “this is not a case in which Chrysler seeks an exemption certificate for a structure that is only indirectly responsible for removing pollution from the air.”